**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**In Re:**

    **DOW CORNING CORPORATION,**

       **Reorganized Debtor.**

                                         **Honorable Denise Page Hood**

    **Civil Action No. 05-30133-DT, Helen Miller v. DCC LF.
    Civil Action No. 05-30276-DT, Pamela Sutherland v. DCC LF.
    Civil Action No. 05-30469-DT, Beverly Ezra v. DCC LF.
    Civil Action No. 05-30496-DT, Kathy Jean Gatza v. DCC LF.**

                                                       /

**OPINION DENYING MOTIONS FOR SUMMARY JUDGMENT and
GRANTING MOTIONS FOR LEAVE TO FILE A REPLY**

**I.    BACKGROUND**

This matter is before the Court on the Litigation Facility's Motions for Summary Judgment on the above-captioned cases. Attorney James Elsman represents all four Plaintiffs. Hearings were held on the motions on March 17, 2011 and status conferences held on the matter. The Court allowed the parties to file various supplemental briefs. The Litigation Facility, the Plaintiffs' Liaison Counsel and Plaintiffs have since filed supplemental briefs.

Plaintiff Helen Marlene Miller filed the instant action claiming various illnesses and medical conditions, including: Barrett's esophagus; Lupus; Crest; Autoimmune Diseases; Loss of Sight due to Autoimmune Disease; Rare Mucolusa in gallbladder; EBV; muscle weakness, severe pain in joints and bones; and fibromyalgia. Miller claims these conditions were caused by the Surgitek gel-filled silicone breast implants implanted in 1975 and 1976; "Silastic" implants placed in 1977; Heyer

Schulte saline implants implanted in 1978; Optiman implants placed in 1985; "Silastic" implants placed in 1988 and/or the raw silicone materials used in the implants. (05-30133, Ex. 1; Questionnaire)

Plaintiff Pamela Sutherland filed the instant action claiming various illnesses and medical conditions, including: lupus; atypical connective disease; Reynaud's disease; vomiting; trouble walking; physical, mental and emotional diseases. Sutherland claims that these conditions were caused by the Surgitek gel-filled silicone breast implants implanted in 1988 and explanted in 1992. Sutherland asserts that her illnesses and medical conditions were caused by the silicone gel and/or elastomer used by the manufacturer of the Surgitek implants which Surgitek claims was manufactured by Dow Corning. (05-30276, Ex. 1; Questionnaire)

Plaintiff Beverly Ezra filed the instant action claiming various illnesses and medical conditions, including: muscle aches and pains all over her body; metallic taste in the mouth; chronic problems with diarrhea; dizziness/vertigo problems; chronic low-grade fevers; frequent yeast infections; chronic fatigue; severe headaches; loss of taste and smell; memory loss and loss of concentration; frequent gastrointestinal problems; sinus problems with earaches; difficulty swallowing; problems with choking; easily bruised with slow healing of bruises and cuts; spider veins on legs and feet; coldness of hands, fingers, feet, toes and face; muscle spasms; problems with rashes; tingling and numbness in extremities; difficulty breathing; unexplained dental problems; excessive hair loss; as well as emotional, physical and financial losses. Ezra claims these conditions were caused by the Surgitek gel-filled silicone elastomer breast implants placed in 1984 and/or the ICU textured saline implants which replaced the Surgitek implants in 1993, and/or the raw silicone materials used to manufacture her implants. (05-30469, Ex. 1; Questionnaire)

Plaintiff Kathy Gatza filed the instant action claiming various illnesses and medical conditions, including: Atypical Connective Tissue Disease; Deforming and Pain in Joints; Muscle Pain and Weakness. Gatza claims these conditions were caused by the Surgitek gel-filled silicone elastomer breast implants surgically implanted in 1984, which were replaced by saline implants in 1992 and 1999, and the raw silicone materials used to manufacture her implants. (05-30496, Ex. 1; Questionnaire)

## II.     ANALYSIS

### A.     Summary Judgment Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.  Product Liability Causation and Expert Report Disclosures

The Litigation Facility moves for summary judgment on the grounds that, in the absence of expert testimony, Plaintiffs cannot create a genuine issue of material fact as to either product defect or causation. The Litigation Facility asserts Plaintiffs must establish the elements of product defect and causation to move forward with the case on which Plaintiffs have the burden of proof.

Plaintiffs initially responded that the cases are not appropriate for summary judgment based on the *res ipsa loquitur* doctrine and that the motions are premature. Plaintiffs argued that the liability under *res ipsa loquitur* ("the thing speaks for itself") is well-established in American law. Plaintiffs claimed that the MDL files are so full of evidence that silicone implants cause disease that the evidence could not physically be carried into one courtroom. Plaintiffs stated that the documents disclose cheating by manufacturers including Dow Corning and its predecessors plus facts hidden by false-science and lies to the FDA and others. Plaintiffs asserted that this is not a *Daubert*[1] case because causation and product defect have already been admitted by Dow Corning via payment in the Settlement Facility.

In its supplemental brief, the Litigation Facility argues that the deadline has passed for Plaintiffs to submit expert disclosures. Although the Court allowed Plaintiffs to submit their expert disclosures at a later date, which they did, the Litigation Facility argues that the submissions do not satisfy the basic requirements for expert disclosure under Rule 26 of the Rules of Civil Procedure,

---

[1]  *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993).

let alone the evidentiary standards for scientific opinion set forth in *Daubert*.

Plaintiffs' Liaison counsel argues that the Court should apply the *Daubert* issue with great care at this stage. The most common way to raise a *Daubert* challenge is to a file a motion to exclude expert opinion under Fed. R. Civ. P. Rules 702 and 104(a). Liaison counsel argues that *Daubert* applies to an expert's opinion and to expert reports exchanged by the parties pursuant to Fed. R. Civ. P. 26.

Rule 26(a)(2) governs the disclosure of expert testimony which states:

> (2) *Disclosure of Expert Testimony.*
> (A)  *In General.*  In addition to the disclosures required by Rule 26(1)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> (B)  *Witnesses Who Must Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> > (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;
> > (ii)  the facts or data considered by the witness in forming them;
> > (iii) any exhibits that will be used to summarize or support them;
> > (iv)  the witness's qualifications, including the list of all publications authored in the previous 10 years;
> > (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> > (vi)  a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2).

In Michigan, causation is an essential element of any product liability action. M.C.L. §

600.2945(h); *Mascarenas v. Union Carbide Corp.,* 196 Mich. App. 240, 249 (1992), overruled in part on other grounds, *Buckler v. Automatic Lawn Sprinkler Co.,* 479 Mich. 378 (2007).  Mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two. *Jordan v. Whiting Corp.,* 396 Mich. 145, 151 (1976); *Hartsfield v. United Technologies Otis Elevator Co., Inc.,* 986 F.Supp. 449, 452 (E.D. Mich. 1997).  In a products liability action, "expert testimony is indispensable to prove causation where 'it is to the scientific community that the law must look for the answer.'" *Schaendorf v. Consumers Energy Co.,* 2009 WL 563904 (Mich. App. 2009).  However, in certain circumstances, a plaintiff need not introduce an "essential element" of "admissible expert testimony" in order to prove causation if a defendant has failed to offer scientific evidence regarding causation. *Gass v. Marriott Hotel Services, Inc.,* 558 F.3d 419, 431-33 (A plaintiff is "not required to produce expert testimony on causation where defendants have failed to offer scientific evidence regarding the effects of Demand CS or Suspend SC.")  Michigan law requires only that a plaintiff claiming negligence prove his or her case by a preponderance of the evidence, and does not require that a plaintiff alleging exposure to a harmful substance prove with certainty that he or she was exposed to a particular chemical. *Id.* at 431.  A physician's opinion may be inadmissible if the opinion is based on unsupported personal opinion of causation. *Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F.2d 1349, 1360 (6th Cir. 1992).

    **C.**    **Expert Submissions by Plaintiffs**

The posture of this case before the Court is at the disclosure stage under Rule 26.  The Litigation Facility's motion is based on Plaintiffs' failure to disclose experts as required by Rule 26. The Court allowed Plaintiffs to submit expert disclosures by March 31, 2011.  Plaintiffs have done

6

so. However, the Litigation Facility argues that the expert disclosures still do not meet the requirements of Rule 26. Plaintiffs' latest submission filed September 18, 2011 states that all four Plaintiffs will use the same experts, J.J.B. Pierre Blais, Ph.D. and Radford Shanklin, M.D. to establish general causation. (9/18/2011 Resp., pp. 1, 4) All four Plaintiffs will also use the same specific causation experts, Justus J. Fiechtner, M.D. and Jerry W. Bush, M.D. (9/18/2011 Resp., pp. 1, 4)

The Court notes that the disclosures of Plaintiffs' experts have been made in piecemeal fashion and not as Rule 26 intended. However, Plaintiffs have now identified the expert witnesses they will use to support their claims. The Court applies the expert report requirements under Rule 26(a)(2)(B) to each named expert.

### 1. J.J.B. Pierre Blais, Ph.D., F.C.I.C. - March 28 and 30 and June 6, 2011 Letters

Dr. J.J.B. Pierre Blais indicates that he will provide an opinion on the identity, significance and injurious potential of substances and ingredients comprised in mammary implants, their impurities, the by-products formed incidental to implant manufacturing processes, products formed through physico-chemical deterioration of implant materials and mechanisms whereby such substances form, degrade and injure. (3/28/11 Letter) As noted by Plaintiffs, Dr. Blais will testify only as to the "gel" and not the "shell" and he is not offered for specific causation. (9/18/11 Resp., p. 16) Dr. Blais also sets forth a Summary of Opinions in his March 30, 2011 Letter. In his March 28, 2011 Letter, Dr. Blais sets forth the general principles and history of the gel filled implants, in addition to the material he has reviewed and sources of information forming his opinions. In his March 30, 2011 Letter, Dr. Blais lists the exhibits he proposes to use at trial. Dr. Blais' curriculum vitae and attachments list his qualifications, including testimonies in various trials and before

governmental agencies in the United States and Canada. Dr. Blais notes his compensation in his March 30, 2011 Letter.

Although not all contained in one document as Rule 26(a)(2)(B) may contemplate, the rule has been met. The Litigation Facility argues about the substance of Dr. Blais' opinions. However, as noted by Plaintiffs' Liaison Counsel, the most common way to raise a *Daubert* challenge is to a file a motion to exclude expert opinion under Fed. R. Civ. P. Rules 702 and 104(a). The Litigation Facility's initial motion raised the issue of Plaintiffs' failure to disclose their experts. Rule 26 governs the requirements of the reports while *Daubert* applies to an expert's opinion. The Court, at this stage, will not address any *Daubert* arguments given that discovery has not proceeded as to the experts now disclosed by Plaintiffs.

### 2.     Radford Shanklin, M.D., F.R.S.M.

Dr. Radford Shanklin's March 28, 2011 Declaration notes that he has been asked by Beverly Ezra to serve as a "potential witness" on her behalf. He concludes that her medical conditions and health since 1984 and 1985 are due to the siloxanes from which these devices are made and contain, not to rule out other contained chemicals such as platinum catalyst and other organic residues of manufacture. (3/28/2011 Shanklin Decl.) Dr. Shanklin asserts that he states that he has studied the tissue reactions of the human body and in animal studies the capacity of silicones to induce granulom formatio, subacute and active chronic concludes that (*Id.*) He indicates that he has reviewed thousands of papers regarding silicone/siloxane induced tissue reactions and disease. (*Id.*)

Plaintiffs identify Dr. Shanklin as a "general causation" expert. In their Responses they further note Dr. Shanklin's experience and expertise. However, the Court finds that his March 28, 2011 Declaration lacks the requirements set forth in Rule 26(a)(2)(B). The Declaration does not

contain a complete statement of all opinions he expresses and the basis for such opinions. Other than referring to the thousands of documents and his experience, Dr. Shanklin does not specifically refer to the facts or data he has considered nor has he listed the exhibits that will be used to summarize or support any opinion, especially as a "general causation" expert. Although Dr. Shanklin may have submitted a curriculum vitae, the Declaration does not indicate his compensation. In any event, the Declaration states that he was only a "potential witness." Dr. Shanklin's Declaration is an insufficient expert report to establish "general causation" under Rule 26(a)(2)(B). Dr. Shanklin also does not qualify as a "specific causation" expert since his March 28, 2011 Declaration only indicates that he is a "potential witness." Plaintiffs are not allowed to use Dr. Shanklin to supply any evidence on a motion or at trial for "general causation". Fed. R. Civ. P. 37(c)(1).

### 3. Justus J. Fiechtner, M.D., MPH

Dr. Justus J. Fiechtner's March 31, 2011 Submissions for all four Plaintiffs state that he has been retained to represent each Plaintiff. He states his opinions and the basis for his opinions in the Submissions. The facts and data he relied upon include Plaintiffs' medical records. He submits a curriculum vitae to support his qualifications and publications. Dr. Fiechtner's compensation is set forth in his Submission.

Dr. Fiechtner's March 31, 2011 Submissions are short and to the point and comply with Rule 26(a)(2)(B). Dr. Fiechtner is identified as a "specific causation" expert for the four Plaintiffs. The Litigation Facility argues with the substance of Dr. Fiechtner's opinions. However, as noted by Plaintiffs' Liaison Counsel, the most common way to raise a *Daubert* challenge is to a file a motion to exclude expert opinion under Fed. R. Civ. P. Rules 702 and 104(a). The Litigation Facility's

initial motion raised the issue of Plaintiffs' failure to disclose their experts. Rule 26 governs requirements of the reports while *Daubert* applies to an expert's opinion. The Court, at this stage, will not address any *Daubert* arguments given that discovery has not proceeded as to the experts now disclosed by Plaintiffs.

### 4. Jerry W. Bush, M.D.

Dr. Jerry W. Bush submitted letters dated March 31, 2011 as to each of the four Plaintiffs. He indicates in each of his letters that he has been retained to represent each of the Plaintiffs. Dr. Bush expressed his opinion that the autoimmune disease and related disorders suffered by each of the Plaintiffs were caused by the silicone breast implants. He summarized each Plaintiff's history. Dr. Bush indicates that he has yet to formulate the exhibits to be used at trial or deposition. He presented a curriculum vitae, a case list of depositions and trial testimony, along with his compensation.

Dr. Bush's March 31, 2011 Letters are not lengthy, but comply with Rule 26(a)(2)(B). Dr. Bush is identified as a "specific causation" expert for the four Plaintiffs. The Litigation Facility argues with the substance of Dr. Bush's opinions. However, as noted by Plaintiffs' Liaison Counsel, the most common way to raise a *Daubert* challenge is to a file a motion to exclude expert opinion under Fed. R. Civ. P. Rules 702 and 104(a). The Litigation Facility's initial motion raised the issue of Plaintiffs' failure to disclose their experts, supplementing their motion with a *Daubert* argument. Rule 26(a)(2)(B) governs requirements of the reports while *Daubert* applies to an expert's opinion. The Court, at this stage, will not address any *Daubert* arguments given that discovery has not proceeded as to the experts now disclosed by Plaintiffs.

### III.   CONCLUSION

Since the Court finds that the three of expert witnesses identified by the Plaintiffs sufficiently meet the requirements of Rule 26(a)(2)(B), at this juncture, Plaintiffs are able to survive a summary judgment motion. This ruling does not preclude the Litigation Facility from a later challenge to the admissibility of the experts under *Daubert* or a substantive summary judgment motion. A new scheduling order will be issued by the Court to proceed with discovery. It is expected that all parties will timely adhere to the schedule and the rules governing a civil action.

Accordingly,

**IT IS ORDERED** that Plaintiffs have complied with Fed. R. Civ. P. 26(a)(2)(B) as to their experts: Dr. J.J.B. Pierre Blais ("general causation"); Dr. Justus J. Fiechtner ("specific causation"); and Dr. Jerry W. Bush ("specific causation"). Plaintiffs' expert report as to Dr. Radford Shanklin does not comply with Rule 26(a)(2)(B), therefore Plaintiffs cannot use Dr. Shanklin as an expert witness.

**IT IS FURTHER ORDERED:**

**In Case No. 05-30133,** *Miller v. DCC LF,* the Motion for Summary Judgment filed by DCC LF **(Doc. No. 14, filed 2/8/2011)** is DENIED WITHOUT PREJUDICE and the Motion for Leave to File a Reply **(Doc. No. 29, filed 8/29/2011)** is GRANTED.

**In Case No. 05-30276,** *Sutherland v. DCC LF,* the Motion for Summary Judgment filed by DCC LF **(Doc. No. 32, filed 12/13/2010)** is DENIED WITHOUT PREJUDICE and the Motion for Leave to File a Reply **(Doc. No. 51, filed 8/29/2011)** is GRANTED.

**In Case No. 05-30469,** *Ezra v. DCC LF,* the Motion for Summary Judgment

11

filed by DCC LF **(Doc. No. 31, filed 2/8/2011)** is DENIED WITHOUT PREJUDICE and the Motion for Leave to File a Reply **(Doc. No. 46, filed 8/29/2011)** is GRANTED.

**In Case No. 05-30496,** *Gatza v. DCC LF,* the Motion for Summary Judgment filed by DCC LF **(Doc. No. 80, filed 2/8/2011)** is DENIED WITHOUT PREJUDICE and the Motion for Leave to File a Reply **(Doc. No. 96, filed 8/29/2011)** is GRANTED.

                                                s/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge

Dated: September 30, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2011, by electronic and/or ordinary mail.

                                                s/LaShawn R. Saulsberry
                                                Case Manager